UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.: 1:19-cv-10431

| | |
|---|---|
| G.D., a minor, by and through her parents and next friends, JEFFREY and MELISSA D., <br><br> Plaintiffs <br><br> v. <br><br> SWAMPSCOTT PUBLIC SCHOOLS, <br><br> Defendant | ) ) ) ) ) ) ) ) COMPLAINT ) ) ) ) ) |

Plaintiff, G.D., a minor, by and through her parents and next friends, Jeffrey and Melissa D., submits the following Complaint.

## PARTIES

1. Plaintiff, G.D., is a minor child with a disability as that term is defined in the federal Individuals with Disabilities Act ("IDEA") and under Massachusetts state law. 20 U.S.C. § 1401(3); Mass. Gen. L. c. 71B, § 1.

2. Jeffrey and Melissa D. ("Parents") are the natural parents of G.D.

3. Defendant, Swampscott Public Schools, acting through its school committee and/or superintendent of schools ("School District"), is the municipal school department of the Town of Swampscott, Massachusetts.

4. G.D. and the Parents are permanent residents of Swampscott, Massachusetts, within the geographic jurisdiction of the School District.

5. The School District is a "local education agency" ("LEA") as that term is defined by federal law. 20 U.S.C. § 1401 (19)(A).

6. The School District is subject to the provisions of the IDEA and Massachusetts regulations promulgated at 603 C.M.R. Chapter 28.00.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction to hear this matter. 20 U.S.C. § 1415(i)(3)(A); 28 U.S.C. § 1331.

8. Venue is proper in this Court. 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

*IDEA Requirements*

9. Under the IDEA, states must ensure that a free appropriate public education ("FAPE") is provided to all eligible children with disabilities. 20 U.S.C. § 1412(a)(1)(A).

10. A FAPE includes special education and related services that meet the standards of the State educational agency[1] and are provided in conformance with an individualized education program ("IEP"). 20 U.S.C. § 1401(9).

11. "Special education" consists of specially designed instruction to meet the unique needs of a child with a disability.

12. "Related services" consist of the support services required to assist a child to benefit from special education instruction.

13. An IEP must be drafted in compliance with a detailed set of procedures which emphasize collaboration among parents and educators.

14. An IEP must be drafted in compliance with a detailed set of procedures which require careful consideration of the child's individual circumstances.

---

[1] By statute, "the term 'State educational agency' means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools". 20 U.S.C. § 1401(32). The Massachusetts Department of Elementary and Secondary Education ("DESE"), acting through its board and commissioner, is the State educational agency for Massachusetts.

15. An IEP must include a statement of the child's present levels of academic achievement and functional performance, including how the child's disability affects the child's involvement and progress in the general education curriculum. 20 U.S.C. § 1414(d)(1)(A)(i)(I)(aa).

16. An IEP must include a statement of measurable annual goals, including academic and functioning goals designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general educational curriculum. 20 U.S.C. § 1414(d)(1)(A)(i)(II)(aa).

17. An IEP must include a description of how the child's progress toward meeting annual goals will be measured and when periodic reports on the progress the child is making toward meeting the annual goals will be provided. 20 U.S.C. § 1414(d)(1)(A)(i)(III).

18. An IEP must include a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child to be involved in and make progress in the general education curriculum and to participate in extracurricular and other nonacademic activities. 20 U.S.C. § 1414(d)(1)(A)(i)(IV)(bb).

19. The IEP is the means by which special education and related services are tailored to the unique needs of a particular child.

*Due Process Hearings under the IDEA*

20. Parents who believe that the LEA (i.e. the school district) has not met its obligations under the IDEA may file a due process complaint to have the dispute resolved at an impartial due process hearing. 20 U.S.C. § 1415(f)(1)(A); 603 CMR § 28.08 (3).

21. In Massachusetts, due process hearings under the IDEA are conducted by the Massachusetts Bureau of Special Education Appeals ("BSEA"). Mass. Gen. L. c. 71B, § 2A; 603 CMR § 28.08 (3).

*Right to Judicial Review*

22. A party aggrieved by the findings and decisions of the BSEA has the right to bring a civil action in federal court within 90 days from the date of the decision. 20 U.S.C. § 1415(i)(2); BSEA Rule XIV A.

23. A reviewing court shall receive the records of the administrative proceedings, hear additional evidence at the request of a party, and grant such relief as the court determines to be appropriate based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C).

## FACTUAL ALLEGATIONS SUPPORTING PLAINTIFFS' CLAIMS

*G.D.'s Disability, Her Eligibility for Special Education and
Related Services, and the School District's Response*

24. G.D. was born on June 30, 2010 and is presently eight years old.

25. G.D. is a severely dyslexic individual with an underlying 'double deficit' phonological processing disorder, placing her at high risk for failure to develop competent and expected literacy skills in the areas of reading and spelling.

26. G.D. is a severely dyslexic individual with a Specific Language Impairment that is primary expressive in nature, and has affected her ability to convey her thoughts and ideas across both oral and, especially written contexts.

27. G.D. is a severely dyslexic individual with a disorder of written language expression that is consistent with dysgraphia.

28. Dyslexia is expressly recognized as a specific learning disability under the Federal regulations. 34 C.F.R. § 300.8(c)(10)(i).

29. As a school-aged child with dyslexia, G.D. is eligible for special education and related services under the IDEA and Massachusetts state law.

30. Beginning in first grade, Parents developed significant concerns over G.D.'s lack of literacy acquisition and the negative impact the lack of academic progress had on G.D.'s literacy acquisition, ability to access the academic curriculum and social/emotional behavior and brought said concerns to School District.

31. In or about June 2017, the School District determined G.D. was eligible for an IEP.

32. In the fall of 2017, G.D. began second grade at Clarke Elementary School ("Clarke") in the School District pursuant to an IEP placement.

33. On September 7, 2017, an Emergency IEP Meeting was convened at Parents' request. Parents communicated concerns to the School District about Clarke's failure to provide IEP services to G.D. during her entire first week of School and lack of implementation of the IEP supports/accommodations she was supposed to be receiving.

34. Clarke's failure to deliver to G.D. the services set forth in her 2017-2018 IEP during her first week of school resulted in denial of a FAPE.

35. At a September 19, 2017 IEP Team meeting, Parents communicated their concerns to the School District about the inappropriateness of G.D.'s special education program and the harm the inappropriate placement was causing her.

36. In response to Parents' concerns as stated at the September 19, 2017 IEP Team meeting, the School District offered G.D. more in-district services not designed to service the severity of G.D.'s needs.

37. At an October 2017 IEP Team meeting, the School District conceded to Parents it did not have an appropriate Language Based program to offer G.D..

38. At a November 2017 IEP Team meeting, Parents communicated their concerns to the School District that G.D.'s testing data evidenced her academic regression while at Clarke.

39. At the November 2017 IEP Team meeting, Parents communicated to the School District that G.D.'s regression data evidenced the inappropriateness of G.D.'s special education program and the lack of implementation of the IEP supports she was supposed to be receiving.

40. At the November 2017 IEP Team meeting, the School District conceded that G.D. was not making progress in her initial IEP placement, and the School District proposed G.D. be placed in its Language Based Learning Center ("LBLC") program.

41. In January 2018, G.D. started an 8-week Extended Evaluation in the LBLC Program.

42. G.D. did not make progress in her second-grade year while attending Clarke.

43. G.D. regressed academically in her second-grade year while attending Clarke.

44. G.D. developed school-based anxiety in her second-grade year while attending Clarke.

45. G.D.'s school-based anxiety while attending Clarke resulted in her refusal to attend school during her second-grade year.

46. In March 2018, the School District convened an IEP Team meeting to develop an IEP for the 2018-2019 school year.

47. At the March 2018 IEP Team meeting, Parents communicated concerns to the School District that G.D.'s testing data evidenced her further academic regression while placed in the LBLC program at Clarke.

48. At the March 2018 IEP Team meeting, Parents communicated to the School District that G.D.'s further regression data evidenced the inappropriateness of G.D.'s special education program and the lack of implementation of the IEP supports she was supposed to be receiving.

49. At the March 2018 IEP Team meeting, the School District presented the Parents with a proposed IEP (the "March 2018 proposed IEP").

50. The March 2018 proposed IEP was not substantially different than the previous IEPs that had failed to provide G.D. an appropriate education during the 20172018 school year.

51. The March 2018 proposed IEP evidenced that G.D. had made no measurable progress on her goals and objectives.

52. The March 2018 proposed IEP was not reasonably calculated to provide G.D. an appropriate education.

53. The Parents rejected the March 2018 proposed IEP.

54. G.D. is a bright girl and she should be reading and writing a lot better than she does; achieving literacy is a goal that is 'appropriately ambitious' in light of G.D.'s circumstances.

55. G.D.'s severe language-based learning disabilities require an out of district school placement in a Language Based Program throughout her entire day, within the context of a substantially separate education program, that is housed within the confines of a school that is designed to meet G.D.'s literacy acquisition needs.

56. In April of 2018, after providing notice of unilateral placement to the School District, Parents enrolled G.D. at Landmark School ("Landmark").

57. Landmark is a private school with an appropriate Language Based specialized program to provide G.D. disability remediation and support throughout her day in all areas of literacy acquisition need.

58. The severity of G.D.'s disabilities required G.D.'s Landmark placement.

59. At Landmark, G.D. is not harmed by school placement-based anxiety.

60. Public schools make direct referrals for out-of-district placements at Landmark for severely dyslexic students like G.D..

61. Parents requested that the School District pay for the costs associated with this private educational placement for G.D. at Landmark.

62. The School District refused the Parents' request to pay for the costs of Landmark.

*The Parties' Due Process Hearing before the BSEA*

63. On or about March 30, 2018, Parents initiated their due process hearing request in accordance with the procedures set forth in the IDEA, Massachusetts's implementing regulations, and the BSEA rules. 20 U.S.C. §1415(f); 603 C.M.R. §28.08; BSEA Rule I.

64. A due process hearing was held before a BSEA Hearing Officer over the course of eight days between June 4, 2018 and October 31, 2018.

65. The BSEA Hearing Officer issued her written Agency Decision on December 11, 2018 (the "December 2018 BSEA decision").

66. The December 2018 BSEA decision conceded that G.D. had made no progress while at Clarke, but because G.D. made academic "slow gains" the BSEA Hearing Officer found, incorrectly and/or erroneously, that the lack of progress did not amount to a denial of FAPE as evidence of "slow gains" sufficed.

## COUNT I
(Violation of 20 U.S.C. § 1414)

67. The plaintiffs incorporate the allegations set forth above as if fully set forth herein.

68. The School District violated the IDEA in the development of the March 2018 proposed IEP in determining "slow gains" when coupled with no progress data, was/is sufficient to satisfy a FAPE with respect to G.D.'s ability to reach her IEPs annual goals and objectives.

69. The School District's March 2018 proposed IEP violated the IDEA and failed to ensure the provision of a FAPE by its failure to include a statement of how G.D.'s

progress toward meeting the goals and objectives will be measured in light of lack of existence of any progress data during the 2017-2018 IEP period.

70. The School District violated the IDEA in the development of the March 2018 proposed IEP by failing to consider regression data provided by the Parents evidencing that G.D. did not make progress pursuant to her 2017-2018 IEP.

71. The School District violated the IDEA in the development of the March 2018 proposed IEP by failing to consider G.D.'s academic, developmental, emotional, social, and functional needs.

72. The School District violated the IDEA in the development of the March 2018 proposed IEP by failing to address G.D.'s lack of progress data with respect to her IEPs annual goals and objectives.

73. The foregoing violations of the IDEA, individually and cumulatively, resulted in a denial of a FAPE to G.D..

## COUNT II
(Violation of 20 U.S.C. § 1412)

74. The plaintiffs incorporate the allegations set forth above as if fully set forth herein.

75. The IDEA requires that the School District makes a free appropriate public education available to all children with disabilities, including G.D..

76. The School District's procedural and substantive violations of the IDEA resulted in a denial of a free appropriate public education to G.D..

## COUNT III
(Denial of Due Process)

77. The plaintiffs incorporate the allegations set forth above as if fully set forth herein.

78. During the course of the due process hearing, the BSEA Hearing Officer refused to allow Landmark (or a duly qualified educator from Landmark) to testify at the due process hearing with respect to progress G.D. made while participating in Landmark's educational programs.

79. Notwithstanding the BSEA Hearing Officer's refusal to hear testimony of G.D.'s progress while participating in Landmark's educational programs from Landmark, the December 2018 BSEA decision cites the Parents' failure to introduce evidence of G.D.'s progress at Landmark.

80. The BSEA Hearing Officer's evidentiary rulings—including, but not necessarily limited to, her refusal to hear testimony from Landmark with respect to progress G.D. made while participating in Landmark's educational programs violated G.D.'s right to procedural due process.

81. The BSEA Hearing Officer's evidentiary rulings—including, but not necessarily limited to, her refusal to hear testimony from Landmark with respect to progress G.D. made while participating in Landmark's educational programs violated G.D.'s right to substantive due process.

82. The December 2018 BSEA decision was the direct result of a denial of G.D.'s due process rights.

83. The December 2018 BSEA decision must be overturned because it was the direct result of a denial of G.D.'s due process rights.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court: (1) enter judgment in G.D.'s favor; (2) reverse the BSEA Agency Decision; (3) enter an order directing the School District to reimburse the Parents for the costs associated with G.D.'s educational

placement at Landmark; (4) enter an order that the proposed IEP is not reasonably calculated to provide G.D. with an appropriate education and that Landmark provides G.D. an appropriate education; and (5) award Parents their costs and attorney fees and such other relief as the Court deems just and proper.

Dated: March 8, 2019

Respectfully Submitted,
The Plaintiffs,
Appearing Pro Se,

/s/ Melissa Sindeband Dragon

Melissa Sindeband Dragon, Esq.[2]
c/o Family Law Practitioners, PC
100 Sylvan Road, Suite G700
Woburn, MA 01801
Telephone: (978) 470-3366
Facsimile: (978) 470-4933
Email: mms@yourfirm.com

---

[2] Melissa D., the above-signed pro se litigant, is also a Massachusetts licensed attorney (BBO # 638952) admitted to practice before the United States District Court for the District of Massachusetts. She appears in this case in her individual capacity and as the parent and next friend of G.D.